# William Gillam, Receiver, v. Daniel B. Nussbaum et al.

1. RECEIVER—*Of Partnership Property, What He Takes.*—A receiver by his appointment over partnership property, takes only such title as the partners had, and the property is subject to all valid and subsisting liens thereon.

2. SAME—*Property in Hands of, Chargeable with Expenses, Exception Rather Than Rule.*—Courts of equity have the power to make the expenses of a business conducted by its receiver chargeable upon the property in his hands, but the right should be exercised with the greatest caution, and cases in which it is done are an exception rather than the rule.

**Bill to Settle a Partnership.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed May 23, 1901.

**Statement by the Court.**—Jesse Bennett filed a bill against Thomas Chandler and Mrs. Thomas Chandler for the dissolution of a copartnership between said Bennett and Mrs. Chandler, and obtained the appointment of appellant as receiver of the partnership estate. He qualified as such receiver and was authorized by order of the court to continue the partnership business theretofore conducted by the firm, which he did at a loss. Thereafter appellant filed his petition for a discharge, upon consideration of which, as well as the pleadings, files and orders in the cause, the chancellor on June 23, 1900, entered a decree which, with the findings, is in substance as follows :

That on August 4, 1897, Nussbaum & Sloman recovered a judgment in the Circuit Court of Cook County against Exrel D. Chandler and Jesse Bennett, trading as Chandler & Bennett, for $672.62 and costs of suit, and to procure satisfaction thereof, sued out a writ of *fieri facias*, and placed same with the sheriff of said county to be executed by levy upon the goods, chattels and property of said Chandler & Bennett, and on the same day said sheriff levied said writ upon the right, title and interest of said Chandler & Bennett, in and to the following described prop-

erty, to wit, one bar, etc. (giving list), contained in the
building situate at corner of Thirty-fifth street and
Calumet avenue, Chicago. That after said levy said Jesse
Bennett filed his bill of complaint against Thomas Chand-
ler and Mrs. Thomas Chandler, for the dissolution of the
copartnership existing between him and Mrs. Thomas
Chandler, and for a receiver, being the bill in ·this suit, and
that said Mrs. Chandler and Exrel D. Chandler are one and
the same person. That on motion of said Bennett, William
Gillam was appointed receiver of the property of said
Chandler & Bennett, and on the 5th day of August, 1897
(said sheriff then being in possession of said property so
levied upon as aforesaid), said receiver filed his petition in
said cause, praying, among other things, for a rule on said
sheriff to turn over 'to him said goods and chattels. That
on the hearing on said petition, there were present in court
the solicitor for the complainant, Levi A. Eliel, as solicitor
for the defendants, and the solicitor for the receiver; that
said Eliel .was attorney for said Nussbaum & Sloman in
their said judgment, and that his duties as such attorney
had not ceased when the said petition of said receiver was
heard; and that said Nussbaum & Sloman were not at the
time of said hearing parties to the said suit of Bennett
against Mr. and Mrs. Chandler, and were not then in court
and had not received notice of said petition, save through
their attorney in the judgment aforesaid, and that said
attorney for said Nussbaum & Sloman objected to said
receiver's petition and protested against the entry of the .
order prayed. That the court entered an order on August
5, 1897, commanding the sheriff to turn over the property
levied upon as aforesaid to said receiver, upon the payment
by the receiver of the sheriff's costs and expenses up to
August 5, 1897, subject, however, to all rights and any lien
of Nussbaum & Sloman under said execution and the levy
thereunder. That in compliance with said order said sher-
iff turned said property over to said receiver, on the 5th day
of August, 1897, and that on the 4th day of October, 1897,
said property was sold by said receiver, pursuant to an

order of the court, for the sum of $300. That the receiver has not paid said sum or any part thereof to said Nussbaum & Sloman, or either of them or to any one for them, or to said sheriff of Cook county. That said judgment is still in full force and effect, and that said sum, $672.62, with five per cent interest per annum from August 5, 1897, is due thereon. That on August 5, 1897, said receiver was authorized by an order of the court to continue the business theretofore conducted by said Chandler & Bennett at Thirty-fifth street and Calumet avenue, Chicago, and said receiver did conduct said business until October 4, 1897, and he used the said property levied upon as aforesaid in and about the said business; and that said business was conducted by him at a loss, and his accounts show a deficit of $773.89 incurred therein, and said Jesse Bennett, Exrel D. Chandler and Thomas Chandler, have been since August 4, 1897, and are now insolvent and financially irresponsible. That at the receiver's sale of the property levied upon under said writ and turned over to the receiver as aforesaid, said Nussbaum & Sloman made a bid of $250 for the same, but that one Ira J. Mix bid $300, and became the purchaser thereof. That the only property possessed by said Chandler & Bennett and the only property which came into the receiver's hands, was said property levied upon as aforesaid and a certain leasehold interest in said premises at Thirty-fifth street and Calumet avenue, and said leasehold interest was sold for the sum of $200, and the receiver received said sums of $300 and $200, the proceeds of the sale of said property and said leasehold, and that said receiver paid out on account of sheriff's costs incurred in the levy of said writ $18, and is entitled to a credit of said $18 against the proceeds of the sale of said property levied upon.

It is therefore ordered that the receiver retain out of the said sum of $300, the sum of $18 for his disbursements as aforesaid, and that he pay the balance of said sum, namely, $282, to said Nussbaum & Sloman, or their solicitors, within five days from the date of the entry hereof; and that upon the payment of said sum of $282 as aforesaid, the

accounts of said receiver shall stand approved, and the said receiver shall be discharged.

From this decree the appeal herein is taken.

WYETH and McCONOUGHEY & JONES, attorneys for appellant.

MAURICE M. HOUSEMAN and LEVI A. ELIEL, attorneys for appellees.

MR. JUSTICE WINDES delivered the opinion of the court.

No question is raised by appellant as to the findings of fact in the decree, but it is claimed the chancellor erred in his conclusions of law, in not denying the claim and lien of appellees by virtue of their judgment against Chandler & Bennett, the execution thereon and levy thereunder upon the firm property of Chandler & Bennett, in not approving the receiver's final report, and discharging him.

It seems to be well settled that the title to property is not affected by the appointment of a receiver—that he gets, by virtue of his appointment over partnership property, only such title as the partners had, and takes it subject to all valid and subsisting liens thereon.

In High on Receivers, Sec. 495 (3d Ed.), the author says:

"The jurisdiction of equity over the affairs of insolvent partnerships, by the appointment of receivers, will not be exercised in such manner as to interfere with the rights of creditors, which have ripened into liens upon the firm property, by use of diligence before the receiver's appointment; and the levy of an execution by the judgment creditor of the firm, upon partnership property, before the order appointing a receiver, will not be overreached by such order, and the subsequent appointment of a receiver will not deprive the execution creditor of the rights acquired by his levy."

In Chicago Title & Trust Co. v. Smith, 158 Ill. 417–25, the court say:

"A receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien personally acquired in good

Gillam v. Nussbaum.

faith.  He can not have the right to take possession of property and hold the same where the owner of the estate for which he is receiver would have no right to do so.   A court of equity is bound to respect legal rights and preferences lawfully acquired,and make distribution accordingly."

The title of an assignee in case of a voluntary assignment for creditors, is similar to that of a receiver.   Of such title the Supreme Court in Hooven, etc., Co. v. Burdette, 153 Ill. 672-9, says:

" The rule is well settled that the assignee of a failing debtor takes the property assigned subject to all equities, liens or incumbrances which existed against the same in the hands of the insolvent " (citing numerous cases).

The court held in that case, however, that although the lienholder's claim was superior to claims for indebtedness incurred by the assignee in continuing the business of the insolvent by order of the County Court, that as the property passed to the hands of the assignee, the lienors not insisting that it be turned over to them, and having consented to a sale thereof, they should share in the costs necessarily incurred, because they had the benefit of the assignee's services.

In Link Belt Machinery Co. v. Hughes, 174 Ill. 155-63, which was a case of a receivership, it was held that the " receiver took the property subject to the same terms and conditions as it was held by his insolvent.   If appellee had a lien against the property for rent, he also had a lien against the property after it thus passed into the hands of the receiver," citing with approval the Hooven case, *supra*. The court also say:

" In this case, where the property was sold by the receiver under and by order of the court, preserving whatever rights existed in favor of appellee Hughes, his lien continued and was transferred to the proceeds arising from the sale of such property, and was prior to the claims of other creditors or other costs."

To a like effect in principle are the cases of Ex parte Dunne, 8 S. C. (Rich.) 233, Van Alstyne v. Cook, 25 N. Y. 489-96, and New v. Nicoll, 73 N. Y. 127-31.

It is true, as a general rule, that the object of appointing a receiver is to preserve the property for the benefit of all parties interested, and when property is taken in charge by the court, through its receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services, and the court has the right, when the property can be best conserved, to order its receiver to continue a business. This was held in the case of Knickerbocker v. McKindley Coal Co., 172 Ill. 535–47, in which it was also held that the property in the hands of the receiver, when purchased at a foreclosure sale by the personal representatives of the party who created the indebtedness which occasioned the receivership, was subject to the claims of persons having claims against the receiver for materials furnished to the latter to carry on the business. The court, however, held that while the expenses of the business conducted by the receiver might be made chargeable on the property, the right so to do should be exercised with great caution, and should be done only when it was necessary to take care of and save the property.

In the very recent case of Makeel v. Hotchkiss, decided by the Supreme Court April 18, 1901, and reported in 33 Chicago Legal News, 301, the court considered the right of a court of equity to make the expenses of a business conducted by its receiver chargeable upon the property in his hands a claim superior to previous liens, and held that, while it had such right, it should be exercised with great caution, and declined to hold that it was proper in that case. Among the grounds for so holding, the court states that in the receivership case the previous lien was in no way questioned, the receiver was appointed by consent of the litigating parties, and the amount realized at a sale of the property was only sufficient to pay the mortgage lien and costs.

In the case at bar no question is made that the lien of appellees, by virtue of their execution and levy thereunder, was subsisting at the time the receiver took possession, and

still exists, and by the terms of the order by which the property was turned over to the receiver, he took it subject to all rights and to any lien of appellees. Moreover, appellees' attorney, at the time the order was made, objected thereto and protested against its entry, and it nowhere appears from the record that appellees, or any one for them, ever assented directly or indirectly to the continuance of the business by the receiver, or that he had any benefit therefrom. The chancellor, who has a wide and varied experience in such matters, did not see fit to make the charges and expenses of the receiver, or any losses incurred by him in the conduct of the business, superior to the lien of the appellees. For the chancellor to have done so, would, as it appears to us, have been inequitable and in total disregard of the rights and claims of appellees, however harsh the effect upon appellant by reason of the insolvency of the partners to the litigation. Appellant has acted in the conduct of the business knowingly in the appropriation of property which came to his hands specially subjected to the lien of appellees, by the order of the chancellor and against the objection and protest of appellees' attorney, and must take the consequences of his own lack of discretion.

The decree of the Circuit Court entitling appellant to a discharge upon the payment by him to appellees of the proceeds of such property, less the sheriff's costs paid by him, is just and is affirmed.