## ADAMS *v.* COLLIER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

Argued April 20, 1887. — Decided May 27, 1887.

When an assignee in bankruptcy files a petition in the District Court, sitting in bankruptcy, under § 5063 of the Revised Statutes, showing a dispute between him and others, as to property which has come into his possession, or which is claimed by him, the court — all parties interested appearing, and asking a determination of the dispute — has power to determine, at least, the question of title.

Section 5057 of the Revised Statutes, prescribing the limitation of two years as to suits touching any property or rights of property transferable to or vested in an assignee in bankruptcy, applies as well to suits by the assignee as to suits against him.

When an assignee files his petition in the District Court, sitting in bankruptcy, showing a dispute between him and others as to property in his possession as such assignee, and the parties sued appear and unite in the prayer for the determination of the suit, and the assignee, after the expiration of two years, without the consent of the defendants dismisses his suit and files a bill in equity in the Circuit Court covering substantially the same object, the latter suit is to be deemed a continuation of the former for the purposes of limitation prescribed by § 5057 of the Revised Statutes.

An assignee in bankruptcy has no standing to impeach a voluntary conveyance made by the bankrupt to his children prior to the adjudication in bankruptcy, unless such conveyance was void because of fraud; and, in Georgia, it is not fraudulent and void when the property conveyed forms an inconsiderable part of the grantor's estate, and there is no purpose to hinder and delay creditors. Only existing creditors have a right to assail such a conveyance. The assignee, there being no fraud, takes only such rights as the bankrupt had.

ON the 25th day of September, 1863, Benjamin B. Barnes made his deed conveying to certain of his children several tracts of land in the counties of Crawford and Houston, in the state of Georgia. The deed was witnessed by three persons — one of whom was a justice of the peace — who certified that it was signed, sealed, and delivered in their presence. It was duly recorded in Crawford County, where most of the lands are, on the 26th of March, 1864; in Houston County, September 30, 1874.

The grantor, upon his own petition, was, March, 1874, adjudged a bankrupt by the District Court of the United States for the Southern District of Georgia. His schedule of real estate embraced these lands. He was in the actual possession thereof at the time of filing his petition in bankruptcy.

In June, 1874, immediately after an assignment, in the usual form, by the register of the estate of the bankrupt, his assignee in bankruptcy went into possession of the lands, and thereafter took to himself, as such assignee, the rents and profits thereof.

On the 19th of January, 1876, the assignee filed his petition in the District Court, in bankruptcy, setting forth the above facts, and stating that the title to the lands was in dispute between him and the grantees in the deed of September 25, 1863. The petition alleged that the deed was wholly voluntary, and that, from its date to the commencement of the proceedings in bankruptcy, the grantor was in the continuous, uninterrupted possession of the lands, using and controlling the same as his property, and enjoying the rents, issues, and profits thereof. The prayer of the assignee was for notice to the claimants as required by § 5063 of the Revised Statutes, and for a sale of the lands, the proceeds to be held to answer any suit which might be instituted by the claimants.

That section of the Revised Statutes provides: " Whenever it appears to the satisfaction of the court that the title to any portion of the estate, real or personal, which has come into possession of the assignee, or which is claimed by him, is in dispute, the court may, upon the petition of the assignee, and after such notice to the claimant, his agent or attorney, as the

court shall deem reasonable, order it to be sold, under the direction of the assignee, who shall hold the funds received in place of the estate disposed of; and the proceeds of the sale shall be considered the measure of the value of the property in any suit or controversy between the parties in any court. But this provision shall not prevent the recovery of the property from the possession of the assignee by any proper action, commenced at any time before the court orders the sale."

The claimants appeared and answered the petition. They asserted title to the property under the deed of 1863, claiming: 1. That the grantor made the deed to his children in good faith, by way of advancement, and without any intent to delay or defraud his creditors, these lands constituting, at the time, an inconsiderable part of his estate, and his other property being largely more than was necessary to meet any indebtedness he then or thereafter had; 2. That the deed was delivered to the grantees by the grantor at or about the time of its execution; 3. That the grantor's possession, at any time thereafter, of the lands, was held for the grantees; 4. That the grantor was entirely solvent when adjudged a bankrupt, and was induced to go into bankruptcy by the fraudulent conduct of others, who, taking advantage of his feeble health, persuaded him into taking that step, and to include these lands in his schedule of real estate. They prayed that the assignee be required to account to them for the rents and profits received by him.

Upon the issues thus made the parties went into proofs, in accordance with the rules of the court. But, for reasons not disclosed by the record, the assignee, by leave of the court, and without notice to the defendants, withdrew his petition "without prejudice to either party or to any other proceeding he may be advised to institute touching the subject-matter of said petition."

In a few days thereafter, to wit, on December 1, 1879, the defendants presented a petition to the District Court, sitting in bankruptcy, reciting the foregoing facts, and praying that the assignee be required to surrender the possession of the premises to them, and account for rents and profits received

by him. To this petition the assignee demurred for want of jurisdiction in the District Court to give the relief asked. No further steps seem to have been taken in that proceeding.

The present suit was commenced by the assignee in the Circuit Court on the 16th day of December, 1879. Its object was to obtain a decree requiring the surrender by the defendants of the title deed for these lands, and ordering their sale. The bill set out, substantially, the same facts as those alleged in the petition filed by the assignee in the District Court. The relief asked was based upon the following grounds: 1. That these lands were the property of the bankrupt at the time of the adjudication in bankruptcy; 2. That the deed of 1863 was never delivered by the grantor to the defendants, or to any of them, in the presence of the subscribing witnesses, nor "until he became so greatly involved that he feared his creditors could reach said lands;" 3. That the deed was wholly voluntary; 4. That if the defendants ever had a right to recover the lands from the assignee, their cause of action was barred by § 5057 of the Revised Statutes, which provides: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case waive a right of action barred at the time when an assignee is appointed;" 5. That the deed held by the defendants created a cloud upon the title of the assignee, and interfered with his sale of the lands for an adequate price.

The defendants in their answer resisted the claim of the assignee upon the same grounds relied upon in the original proceeding in the District Court. They also filed their cross-bill, seeking a decree for the surrender of the lands to them, and an accounting by the assignee in respect to the rents by him received.

The Circuit Court, by its final decree, directed the surrender of the deed for cancellation, declared it to be null and void,

dismissed the cross-bill, and ordered the assignee, under the direction of the District Court, sitting in bankruptcy, to sell the lands and distribute the proceeds.

*Mr. Thomas B. Gresham* for appellants. *Mr. R. F. Lyon* filed a brief for same.

*Mr. N. J. Hammond* for appellee.

As to statute of limitations, § 5057, Rev. Stat., see *Norton* v. *de la Villebeuve*, 1 Woods, 163; *Bailey* v. *Glover*, 21 Wall. 342; *Conant's Case*, 5 Blatchford, 54. The court cannot make exceptions to the statute. *Friedlander & Girson*, 9 Bankr. Reg. 331; *McIver* v. *Ragan*, 2 Wheat. 25; *Bank of Alabama* v. *Dalton*, 9 Wheat. 522, 528, 529: *Bacon* v. *Howard*, 20 How. 22; *Beaubien* v. *Beaubien*, 23 How. 190, 208. The Bankrupt Court had no jurisdiction to settle this controversy upon petition or by rule against either party. A bill in equity was needed. *Smith* v. *Mason*, 14 Wall. 419; *Marshall* v. *Knox*, 16 Wall. 551; *Rogers* v. *Winsor*, 6 Bankr. Reg. 246.

If the petitions were without the jurisdiction, they cannot avail to avoid the statute of limitations. *Williamson* v. *Wardlaw*, 46 Geo. 126; *Gray* v. *Hodge*, 50 Geo. 262; *Edwards* v. *Ross*, 58 Geo. 147; *Henderson* v. *Griffin*, 5 Pet. 151. Nor will this court treat this bill as but a continuation of the former proceedings. *Clark* v. *Hackett*, 1 Clifford, 269, 282. The statute bars alike at law and in equity. *Bailey* v. *Weir*, 12 Bankr. Reg. 24; *Comegys* v. *McCord*, 11 Ala. 932.

The dismissal of the petition, &c., "without prejudice," cannot help appellants. *Walden* v. *Bodley*, 14 Pet. 156, 161; *Hughes* v. *United States*, 4 Wall. 232; *Durant* v. *Essex Co.*, 7 Wall. 107; *Creighton* v. *Kehr*, 20 Wall. 8, 12.

The suggestion of fraud, to wit, that to allow this plea of statute of limitations to prevail would be to allow assignee to practise a fraud, cannot avail as an exception to the statute. The assignee is charged with no wrong or deceit. *Beaubien* v. *Beaubien*, 23 How. 190, 208; *Bailey* v. *Glover*, 21 Wall. 342; *Gifford* v. *Helms*, 98 U. S. 248.

The defendants did not set up the statute of limitations by demurrer, plea, or answer. Story's Eq. Pl. §§ 503, 506, 748, 751, 747–749.

Contracts to pay for slaves in Georgia in 1860 are valid and may yet be enforced. *White* v. *Hart*, 13 Wall. 646 ; *Boyce* v. *Tabb*, 18 Wall. 546.

As to fraud; the Code of Georgia of 1867, in force since 1st January, 1863, declared : " The following acts by debtors shall be fraudulent in law against creditors, and as to them, null and void, viz.," . . . (1) " Assignments, where any trust or benefit is reserved to the assignor." . . . (2) " Every conveyance of real or personal estate by writing or otherwise . . . had or made with intention to delay or defraud creditors, and such intention known to the party taking; a *bona fide* transaction on a valuable consideration and without notice or grounds for reasonable suspicion shall be valid." (3) " Every voluntary deed or conveyance not for a valuable consideration made by a debtor insolvent at the time of such conveyance." Code of 1867, § 1942, part 2, or § 1952 of Code of 1863, or § 1952 of Code of 1882. Section 2620, Code of 1867, declared " an insolvent person cannot make a valid gift to the injury of his existing creditors." . . . That was § 2619 of Code of 1863, and is § 2662 of Code of 1882. They are but codifications of Supreme Court decisions in Georgia, which were codified under act of 9th December, 1858.

If the purpose be to hinder or delay creditors, a conveyance is void. *Peck* v. *Land*, 2 Geo. 1 [*S. C.* 46 Am. Dec. 368]. Settlement on wife and children pending suit to avoid the judgment, is void without notice to grantees. *Wise* v. *Moore*, 31 Geo. 148.

Possession, in such case, unexplained, is evidence of fraud. *Fleming* v. *Townsend*, 6 Geo. 103 [*S. C.* 50 Am. Dec. 318]; *Carter* v. *Stanfield*, 8 Geo. 49 ; *Colquitt* v. *Thomas*, 8 Geo. 258 ; *Perkins* v. *Patten*, 10 Geo. 241 ; *Scott* v. *Winship*, 20 Geo. 429. In this court, *Callan* v. *Statham*, 23 How. 477 ; *Lukins* v. *Aird*, 6 Wall. 78.

" Insolvent " defined. *Toof* v. *Martin*, 13 Wall. 47 ; *Buchanan* v. *Smith*, 16 Wall. 277 ; *Dutcher* v. *Wright*, 94 U. S. 557. " Evidence of fraud." Possession after deed made. *Peck* v. *Land*, 2 Geo. 1 [*S. C.* 46 Am. Dec. 368].

When a voluntary deed is void as to existing creditors, see *Clayton* v. *Brown*, 17 Geo. 217, 222, and again in 30 Geo. 490, 495. Settlement on wife and children. *Weed* v. *Davis*, 25 Geo. 684, declares such gifts presumptively fraudulent as against existing creditors, requring to be ·rebutted by evidence. Such transactions "to the prejudice of the creditors are to be scanned closely, and their *bona fides* must be clearly established." *Booher* v. *Worrill*, 57 Geo. 235. So, "if creditors are likely to suffer." *Thompson* v. *Feagin*, 60 Geo. 82.

The cases in the Supreme Court of the United States on this subject are: *Sexton* v. *Wheaton*, 8 Wall. 229 ; *Hinde* v. *Longworth*, 11 Wheat. 199. There it was held in 1826, " A voluntary deed is void as to antecedent, but not as to subsequent creditors," under 13 Eliz. *Venable* v. *Bank of the United States*, 2 Pet. 107, 120, last paragraph. *Parish* v. *Murphree*, 13 How. 92, 99, 100, (1851); *Hudgins* v. *Kemp*, 20 How. 45, 52, (1857) ; *Warner* v. *Norton*, 20 How. 448, (1857) ; *Callan* v. *Statham*, 23 How. 477, (1859). Here there was no sworn answer. *Kehr* v. *Smith*, 20 Wall. 31, (1873); *Lloyd* v. *Fulton*, 91 U. S. 479, 485, (1875); *Smith* v. *Vodges*, 92 U. S. 183, (1875). See also *Cathcart* v. *Robinson*, 5 Pet. 264, 280 ; *Hinde* v. *Longworth*, 11 Wheat., *supra*, was adopted as the rule in Georgia in 1858 in *Weed* v. *Davis*, 25 Geo. 68. This decision of *Weed* v. *Davis* controls here. *Olcott* v. *Bynum*, 17 Wall. 44, and *Lloyd* v. *Fulton*, 91 U. S. 479, 485.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

The lands conveyed by Barnes to his children having come to the possession of, and being claimed by, his assignee, and the title thereto being in dispute, the petition filed by the latter in the District Court was authorized by § 5063 of the Revised Statutes. Under the pleadings in that suit — all the parties therein . having appeared, asserted their respective claims to the lands, and sought a determination of the dispute between them — it was competent for the District Court, sitting in bankruptcy, to have determined, at least, the question of

title. Had that court adjudged that the lands belonged to the grantor in the deed of 1863 at the time he was adjudged a bankrupt, that judgment, until reversed or modified, would have been a bar to any new action by the defendants for the recovery of the property.

But we have seen that the assignee, after the expiration of several years, and without notice to the defendants, withdrew his cause from the District Court, and instituted this suit in the Circuit Court, substantially for the same relief as that asked in his petition in the District Court; using, upon the hearing of this suit, the evidence taken in his original suit. Evidently, he supposed that, in a new suit in the Circuit Court, the limitation of two years prescribed by § 5057 of the Revised Statutes would defeat any claim to the lands which the defendants might assert. But that section, if applicable at all to such a case as this, is applicable to the plaintiff as well as to the defendants. If the assignee claims that the question of title could only be determined in a suit in equity in the Circuit Court, it might well be said that, not having himself instituted suit in the proper court against the holders of the legal title, within two years from the time the cause of action accrued to him, he could not maintain the present suit. But we are of opinion that the suit in the District Court and the present suit, having substantially the same object, are to be regarded, for the purposes of the limitation prescribed by § 5057, as the same suit, the latter being, in effect, a continuation of the former. It results that the question between the assignee and the grantees in the deed of 1863, as to the title to the lands in dispute, was raised in apt time. During the whole period, from the commencement of the suit in the District Court until the institution of the present suit, the defendants have asserted their ownership of these lands, denying that they constituted a part of the bankrupt's estate. They met the issue tendered by the assignee in the forum selected by himself. To permit him to abandon that forum without their knowledge or consent, and — in computing the time fixed for bringing actions, by or against assignees, touching property claimed adversely to him — to exclude the period between the institution of the

suit in the District Court and the commencement of this suit, would make the statute an instrument of fraud. It cannot receive that construction.

Upon the merits of the case we have no serious difficulty. The evidence satisfies us that the conveyance of 1863 was not made with any intent to hinder or defraud the creditors of the grantor. The latter was, at that time, in such condition, as to property, that he could, without injustice to creditors, make a gift of these lands to his children. The transaction was in good faith, and was not a mere device to hinder and defraud creditors. The deed was promptly delivered by the grantor to one for all of the grantees. The possession of the lands by the father, at times, subsequent to the execution and delivery of the deed, and his control of them apparently for his own benefit, is satisfactorily explained by witnesses. His possession, after the deed of 1863, was not intended to be, and was not, in fact, adverse to his grantees. According to the weight of evidence he held possession under and for his children. The only fact in the case which creates doubt on this point is, that he improperly included these lands in his schedule of the real estate of which he was in possession when he filed his petition in bankruptcy. But that circumstance, even if not satisfactorily explained, cannot legally affect the rights of his grantees, and is only important as bearing somewhat on his credibility as a witness, testifying that he delivered the deed immediately upon its execution, and that his possession, at a later period, was for his children. Geo. Code, 1867, in force January 1, 1863, §§ 1942, 2620; *Clayton* v. *Brown*, 17 Geo. 217, 222; *Clayton* v. *Brown*, 30 Geo. 490, 491, 495; *Weed* v. *Davis*, 25 Geo. 684; *Wallace* v. *Penfield*, 106 U. S. 260, 262; *Jay* v. *Welchel*, Supreme Court of Georgia, April 4, 1887.

There is still another view of the case. If the grantor was insolvent when he made the conveyance of 1863; or, if the lands so conveyed constituted more, in value, of his estate than he could rightfully withdraw from the reach of creditors and give to his children; in either case, the assignee in bankruptcy — there being no fraud on the part of the grantor — has no standing to impeach the conveyance. The deed was good as

between the grantor and his children; and, in the absence of fraud, could not be questioned by the assignee, who took only such rights as the bankrupt had. *Yeatman* v. *Savings Inst.,* 95 U. S. 764, 766; *Stewart* v. *Platt,* 101 U. S. 731, 738; *Hauselt* v. *Harrison,* 105 U. S. 401, 406; Rev. Stat. § 5046. It could only be avoided by creditors who were such at the date of the conveyance. *Warren* v. *Moody, ante,* 132.

Upon the whole case we are of opinion that the assignee in bankruptcy of Barnes has no valid claim to said lands or any of them; and that the deed of 1863 was not void as between him and the grantees therein. The Circuit Court erred in declaring it to be void, and in ordering the sale of the lands, under the direction of the District Court, as part of the bankrupt's estate.

*The decree is reversed, and the cause remanded, with directions to set aside the entire decree of November 25, 1882, and for such further proceedings as are consistent with this opinion.*